UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEFF SMITH, ANN WRIGHT, and PAT
MILLER, individually and on behalf
of all others similarly situated,

                Plaintiffs,

vs.                     Case No.  2:10-cv-339-FtM-29DNF

JERRY J. WILLIAMS, ALAN PRATT, EARL
P. HOLLAND, JAMES. W. AULTMAN, JAMES
J. TOROK, BRIAN C. SCHMITT and CARLA
POLLARD,

                Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Dispositive Motion to Dismiss Amended Complaint (doc. #43) and Dispositive Motion to Dismiss Amended Class Action Complaint (doc. #46). Plaintiffs filed an Omnibus Opposition (doc. #47), to which each set of defendants filed a Reply (docs. ##52, 53). With the permission of the Court, plaintiffs also filed a Notice of Supplemental Authority (doc. #66). The Court heard oral arguments on September 19, 2011.

### I.

Orion Bancorp, Inc. (Orion) sponsored, and along with its affiliate subsidiary Orion Bank adopted, the Orion Bancorp. Inc. Employee Stock Ownership Plan (With 401K Provisions) (the Plan) effective September 1, 1992. The Plan is a defined contribution and individual account Employee Stock Ownership Plan (ESOP) whose

stated purpose was to invest primarily in Orion common stock. (Doc. #43-2, §5.1(a)).  The Plan authorized up to 100% of Plan assets to be invested in Orion Bancorp, Inc. common stock (Orion Stock). (Id.)  Plaintiffs, three participants in the Plan, seek to recover losses suffered by the Plan between January 1, 2006 and November 13, 2009.

The Amended Class Action Complaint (doc. #34) (Amended Complaint) alleges five counts of violation of the Employee Retirement Income Security Act of 1974 (ERISA).  Defendants Jerry Williams (Williams) and Carla Pollard (Pollard) are identified as Trustees of the Plan who were also the Chief Executive Officer and Chief Financial Officer respectively of Orion.  They are collectively referred to as the Trustee Defendants.  Williams was also a Director of Orion during the pertinent time period, and with fellow directors Brian Schmitt, Earl Holland, James Torok, Alan Pratt, and James Aultman are collectively referred to as the Director Defendants.  Count I alleges that the Trustee Defendants failed to prudently and loyally manage the Plan's investment in Orion Stock, in violation of 29 U.S.C. § 1104.  Count II alleges that the Trustee Defendants breached their duties of loyalty and prudence by causing the Plan to invest in Orion Stock, in violation of 29 U.S.C. § 1104.  Count III alleges that the Trustee Defendants breached their fiduciary duties by failing to provide complete and accurate information to Plan participants and beneficiaries, in

violation of 29 U.S.C. § 1104.  Count IV alleges that the Director Defendants breached their fiduciary duties by failing to monitor the Plan's fiduciaries, in violation of 29 U.S.C. § 1104(a)(1). Count V alleges that all defendants are liable for the breach of fiduciary duties by their co-fiduciaries, in violation of 29 U.S.C. § 1105.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by Twombly.  James River Ins. Co., 540 F.3d at 1274.  Thus, the Court engages in a two-step approach: "When

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

## III.

All defendants assert that the entire Amended Complaint must be dismissed because plaintiffs failed to exhaust available administrative remedies. (Doc. #43, pp. 18-25; Doc. #46, pp. 20-23.) Plaintiffs respond that they did exhaust administrative remedies. (Doc. #47, pp. 26-28.) The Court agrees with plaintiffs.

## A. Legal Principles:

The Eleventh Circuit is committed to the proposition that "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." Counts v. Am. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997); see also Kahane v. Unum Life Ins. Co. of Am., 563 F.3d 1210, 1214 (11th Cir. 2009); Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1223-24 (11th Cir. 2008); Bickley v. Caremark Rx, Inc., 461 F.3d 1325, 1328 (11th Cir. 2006); Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203,

-4-

1207 (11th Cir. 2003); Perrino v. S. Bell Tel. & Tel., 209 F.3d 1309, 1315 (11th Cir. 2000); Varsity Children's Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir. 1995). The administrative exhaustion requirement is not found in the ERISA statute itself; rather, "it is a court-imposed, policy-based requirement first recognized by this Circuit in Mason v. Continental Group, Inc.[1]" Watts, 316 F.3d at 1207. Because of several important policy rationales, the Eleventh Circuit "strictly enforce[s] an exhaustion requirement on plaintiffs bringing ERISA claims in federal court with certain caveats reserved for exceptional circumstances." Perrino, 209 F.3d at 1315.[2] The Eleventh Circuit extends the obligation to exhaust administrative

_____

[1] 763 F.2d 1219, 1226-27 (11th Cir. 1985).

[2] The Eleventh Circuit has so far recognized four exceptional circumstances which create exceptions to the general rule that an ERISA participant must exhaust administrative remedies. The district court has the discretion to excuse the exhaustion requirement when: (1) resort to administrative remedies would be futile, Lanfear, 536 F.3d at 1224; Counts, 111 F.3d at 108; Perrino, 209 F.3d at 1315; (2) the remedy would be inadequate, Lanfear, 536 F.3d at 1224; Counts, 111 F.3d at 108; Perrino, 209 F.3d at 1315; (3) a claimant was denied "meaningful access" to the administrative review scheme in place, Bickley, 461 F.3d at 1328; Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846-47 (11th Cir. 1990), abrogated on other grounds, Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313, 1314 (11th Cir. 2001); and (4) the reason the claimant failed to exhaust is that (s)he reasonably believed, based upon what the summary plan description said, that (s)he was not required to exhaust administrative remedies before filing a lawsuit. Watts, 316 F.3d at 1207. While both sides discuss various exceptional circumstances, plaintiffs do not assert that any apply in this case.

remedies to claims of breach of fiduciary duties imposed by ERISA itself as well as claims for benefits described in the Plan. Lanfear, 536 F.3d at 1224-25; Bickley, 461 F.3d at 1328 n.6 (declining to reconsider circuit precedent); Perrino, 209 F.3d at 1316 n.6; Mason v. Cont'l Grp., Inc., 763 F.2d 1219, 1226-27 (11th Cir. 1985).

**B. Plan Administrative Remedies:**

Here, the Amended Complaint alleges claims for breach of fiduciary duties in violation of ERISA. Therefore, as discussed above, plaintiffs must exhaust those administrative remedies which are provided for in the Plan.

The express procedures and the discretionary authority of the Administrator set forth in the Plan are sufficient to establish the availability of an administrative remedy. Bickley, 461 F.3d at 1329-30; Lanfear, 536 F.3d at 1224-25. Although both "claims" and "benefits" are undefined terms under the Plan, "claims for benefits" "may be filed in writing with the Administrator." (Doc. #43-2, §2.8.) No particular form for a claim of benefits is required by the Plan. The Administrator is defined as the Employer (id. at §1.2), which in turn is defined as Orion Bancorp, Inc. (id. at §1.21). The Administrator is generally required to provide written or electronic notice of the disposition of a claim to the claimant within 90 days after the filing of the application. (Id. at §2.8.) A claimant whose claim for benefits has been denied has

the right to request a hearing within 60 days of receipt of the notification. (Id. at §2.9.)  Additionally, the Administrator has the "sole and exclusive power and discretion to construe the terms of the Plan and to determine all questions arising in connection with the administration, interpretation, and application of the Plan," which "shall be conclusive and binding upon all persons." (Doc. #43-2, §2.4.)   The Administrator also has the duty and discretion to determine all questions relating to the receipt of benefits under the Plan (doc. #43-2, §2.4(a)), to compute and direct the Trustee with respect to the amount and kind of benefits to which any Participant shall be entitled (id. at §2.4(b)), and to authorize and direct the Trustee as to disbursements.  (Id. at §2.4(c).)

## C.  Sufficiency of Amended Complaint Allegations:

The Amended Complaint alleges that plaintiffs did exhaust their administrative remedies.  Plaintiffs assert that on January 20, 2010, they sent a letter to Orion, the Trustee Defendants, and the Director Defendants demanding recovery of all Plan losses incurred as a result of the breaches of fiduciary duties alleged in the Amended Complaint, and received no response.  (Doc. #34, ¶149.) The Complaint was filed on April 29, 2010 (doc. #1), 99 days later.

Defendants argue that this pleading is insufficient to properly plead exhaustion, is false, and that each and every plaintiff, including all members of the putative class, must have

exhausted administrative remedies prior to bringing a lawsuit in court. (Doc. #43, pp. 21-22; Doc. #46, pp. 22-23.) The Court finds otherwise.

The Court finds that paragraph 149 sufficiently pleads exhaustion of administrative remedies under the Plan. Satisfaction of a condition precedent need only be alleged generally. Fed. R. Civ. P. 9(c). The Plan does not require any particular form of claim or application, and the Court need not decide whether the Trustees properly treated it as a litigation/insurance notice letter. The letter was sent to the Administrator (Orion), and others, as required for a claim under § 2.8 of the Plan. While Bickley held that the named plaintiff in a putative class action suit must exhaust administrative remedies, there is no indication that exhaustion must take place by all the putative class members. Defendants' reliance on Response Oncology, Inc. v. MetraHealth Ins. Co., 978 F. Supp. 1052, 1064 (S.D. Fla. 1997) is misplaced. That case was brought by plaintiff as an assignee of 67 patients under 46 plans, not a class action, and addressed a materially different allegation in its complaint. Finally, the Court need not determine the alleged falsity of the allegation; at the motion to dismiss stage of the proceedings factual allegations are presumed true. The portions of the motion to dismiss based upon the failure to exhaust administrative remedies are denied.

**IV.**

Defendants move to dismiss all five counts of the Amended Complaint on various grounds.  Defendants' overarching theme is that plaintiffs have not stated cognizable ERISA claims, but rather have made allegations of banking mismanagement and malfeasance unrelated to the Plan which do not implicate ERISA fiduciary duties.  The Court addresses each count in turn.

**A.  Count I:**

The Court must first determine what cause of action is alleged in Count I.  This is important because at the oral argument plaintiffs attempted to re-cast the thrust of the first two counts in a manner not supported by the Amended Complaint.

Count I is against the two Trustee Defendants, and is captioned "Failure to Prudently and Loyally Manage Plan's Investment in Orion Stock" in violation of 29 U.S.C. § 1104.  (Doc. #34, p. 35.)  Count I alleges that the Trustee Defendants acted as ERISA fiduciaries by exercising authority and control with respect to the management of the Plan and its assets.  (Id. at ¶119.) Plaintiffs allege that between January 1, 2006 and November 13, 2009, the Trustee Defendants knew or should have known that Orion Stock was not a suitable and appropriate investment for the Plan because as an entity Orion was on the brink of collapse due to (1) undisclosed exposure to losses due to the deteriorating quality of its loan portfolio, (2) the high risk nature of its loans, and (3)

its failure to adequately account for those problems, including by not having adequate loan provisions. (Id. at ¶ 120.) Despite this knowledge of Orion's impending collapse, the Trustee Defendants breached their fiduciary duties by (1) failing to review the appropriateness of Orion Stock as an investment fund for the Plan, (2) automatically investing Orion matching contributions in Orion Stock, (3) acquiring shares of Orion Stock at artificially inflated prices, and (4) concentrating about 96% of the Plan's assets in Orion Stock despite the risks associated with such a concentration. (Id. at ¶121.)  Additionally, Count I alleges that the Trustee Defendants breached their duty to avoid conflicts of interests and to promptly resolve conflicts by failing to (1) engage independent fiduciaries to make independent judgments regarding the Plan's investment in Orion Stock, (2) notify appropriate federal agencies of the facts and transactions which made Orion Stock an unsuitable investment for the Plan, (3) take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served, and (4) place the Participants' interests above the Company's or their own interests. (Id. at ¶122.)  As a result, plaintiffs assert the Plan has lost millions of dollars (id. at ¶124), and seek to have the Trustee Defendants restore the losses to the Plan. (Id. at ¶124.)

Count I therefore alleges two types of breach of fiduciary duty: the failure to diversify and the failure to avoid conflicts of interest.  The Court discusses each.

**(1) Failure to Diversify:**

Defendants argue that Count I fails as a matter of law because defendants had no fiduciary duty to diversify the assets of Orion's ESOP Plan under any legal theory.  Defendants further argue that even if a duty to diversify can be discerned from some source, the allegations of the Complaint do not bring the case within the ambit of such a duty to diversify.  Finally, defendants argue that the they <u>did</u> diversify the Plan, through a choice-of-investment option, which allowed participants to direct their investments into funds other than Orion Stock.

**(a) Trustee Defendants As Fiduciaries:**

The first step is to determine whether the Trustee Defendants were fiduciaries.  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." <u>Pegram v. Herdrich</u>, 530 U.S. 211, 226 (2000).  Under the Plan, the Trustee is appointed by the Employer (Orion) (doc. #43-2, §2.1(a)), is one of the "Named Fiduciaries," (<u>id.</u> at §10.11), and "shall have the sole responsibility of management of the assets held under the Trust, except to the extent directed pursuant to Article II...."

(Id.)   The relevant portion of Article II provides that the Employer shall establish a "funding policy and method" which shall be communicated to the Trustee, "who shall coordinate such Plan needs with its investment policy."   (Id. at ¶2.1(c).)   It is therefore clear that the Trustee Defendants were ERISA fiduciaries when managing the Plan's assets and investments.   For these functions, the Trustee Defendants were in fact fiduciaries of the Plan and its Participants.

**(b) General Duties of ERISA Fiduciary:**

The general principles regarding an ERISA fiduciary's duties are well established.  An ERISA fiduciary is required to discharge his or her duties with respect to a Plan: (1) "solely in the interest of the participants and beneficiaries" 29 U.S.C. § 1104(a)(1); (2) for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, 29 U.S.C. § 1104(a)(1)(A); (3) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B); (4) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so," 29 U.S.C. § 1104(a)(1)(C); and (5) "in accordance with the documents and

instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."  29 U.S.C. § 1104(a)(1)(D).

**(c) ESOP Exemption to Duty to Diversify:**

These general duties for an ERISA fiduciary have been modified, however, for eligible individual account plans (EIAP)[3], including ESOPs.[4]  It is undisputed, at least for purposes of these motions, that the Plan is an ESOP[5] and an EIAP[6].  Since an ESOP invests mainly in an employer's securities, its fiduciaries have been exempted from the statutory duty to diversify.[7]

---

[3]An eligible individual account plan ("EIAP") is "(i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was...invested primarily in qualifying employer securities."  29 U.S.C. § 1107(d)(3)(A).

[4]An ESOP is a stock bonus plan "which is designed to invest primarily in qualifying employer securities."  29 U.S.C. § 1107(d)(6).

[5]The Plan states that it "is designed to invest primarily in Company Stock.  Up to 100% of the assets of the Plan may be invested in Company Stock."  (Doc. #43-2, § 5.1(a).)  The Plan is therefore an ESOP.

[6]The Plan provides for an individual account for each participant (doc. #43-2, §§1.49-1.55, and Article IV), making it an eligible individual account plan.

[7]"Congress, believing employees' ownership of their employer's stock a worthy goal, has encouraged the creation of ESOPs both by giving tax breaks and by waiving the duty ordinarily imposed on trustees by modern trust law (including ERISA)[ ] to diversify the assets of a pension plan."  Steinman v. Hicks, 352 F.3d 1101, 1103 (7th Cir. 2003)(citations omitted).

> In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

29 U.S.C. § 1104(a)(2).   Orion Stock constitutes "qualifying employer securities" within the meaning of 29 U.S.C. § 1107(d)(5)(A).

Defendants argue that § 1104(a)(2) means what it says - an ESOP fiduciary does not violate his or her duty to diversify investments by acquiring or holding the qualifying securities of the employer.   According to defendants this is the end of the discussion, and the end of most claims.   Plaintiffs respond that this statutory exemption can be overcome, and they have done so in their Amended Complaint.

Virtually all circuits which have considered the issue recognize that an ESOP/EIAP fiduciary does not have a *per se* duty to diversify a plan's investments.   See, e.g., Peabody v. Davis, 636 F.3d 368, 374 (7th Cir. 2011)("the express duty to diversify is inapplicable to EIAPs investing in employer securities"); In re Syncor ERISA Litig., 516 F.3d 1095, 1102 (9th Cir. 2008)("The plain language of 29 U.S.C. § 1104(a)(2) does not require fiduciaries of an eligible individual account plan to diversify their investment outside of company stock in order to meet the prudent man standard of care."); Quan v. Computer Scis. Corp., 623 F.3d 870, 878 (9th

Cir. 2010)(same).  Given the language of § 1104(a)(2), no other view seems viable.

Many circuits, however, have found that a duty to diversify exists as a component of the residual duty of prudence which still attaches to an ESOP fiduciary.  Thus, for example, the full quote from Peabody reads: "In any event, while the express duty to diversify is inapplicable to EIAPs investing in employer securities, the full ERISA duty of prudence nevertheless applies." Peabody, 636 F.3d at 374.  The Seventh Circuit has previously stated that:

> [t]he duty of an ERISA trustee to behave prudently in managing the trust's assets, which in this case consisted of the assets of the ESOP, is fundamental. This is true even though, by the very nature of an ESOP, the trustee does not have a general duty to diversify, though such a duty can arise in special circumstances. [citing Steinman].  The duty to diversify is an essential element of the ordinary trustee's duty of prudence, given the risk aversion of trust beneficiaries, but the absence of any general such duty from the ESOP setting does not eliminate the trustee's duty of prudence. If anything, it demands an even more watchful eye, diversification not being in the picture to buffer the risk to the beneficiaries should the company encounter adversity. There is a sense in which, because of risk aversion, an ESOP is imprudent per se, though legally authorized. This built-in "imprudence" (for which the trustee is of course not culpable) requires him to be especially careful to do nothing to increase the risk faced by the participants still further.

Armstrong v. LaSalle Bank Nat'l Ass'n, 446 F.3d 728, 732 (7th Cir. 2006); see also Moench v. Robertson, 62 F.3d 553, 556 (3rd Cir. 1995)("[I]n limited circumstances, ESOP fiduciaries can be liable under ERISA for continuing to invest in employer stock according to

the plan's direction."); Steinman v. Hicks, 352 F.3d 1101, 1106 (7th Cir. 2003)(citing cases); In re Syncor, 516 F.3d at 1102 ("29 U.S.C. § 1104(a)(2) does not exempt fiduciaries from the first prong of the prudent man standard, which requires a fiduciary to act with care, skill, prudence, and diligence in any investment the fiduciary chooses." (citations omitted)); Quan, 623 F.3d at 878 (same).  Indeed, the Ninth Circuit has stated that there are a "myriad of circumstances" that could violate the "prudent man" standard for investment of ERISA plan assets in a company's own stock.  Quan, 623 F.3d at 879 (quoting In re Syncor, 516 F.3d at 1102).

To reconcile the duty to diversify premised on a residual duty of prudence with the language of Section 1104(a)(2), the Third Circuit recognized a rebuttable presumption that investing in employer stock is prudent.  Moench, 62 F.3d at 571-72 (3rd Cir. 1995).  The presumption can be rebutted by showing that the employer's stock is declining precipitously, the trustees knew that the collapse of the company was imminent, and the trustees were conflicted on account of their dual status as trustees of the plan and directors of the company.  Id. at 572.  Three other circuits have adopted the Moench presumption in some form.  Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995); Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 253-55 (5th Cir. 2008); Quan, 623 F.3d at 878 (9th Cir. 2010).  "The presumption [of prudence] does not

-16-

entirely insulate a fiduciary from a breach-of-fiduciary-duty claim because it may be rebutted by a showing that the fiduciary abused its discretion by investing in employer stock." Quan, 623 F.3d at 882.  While not rejecting the merits of the Moench presumption, some circuits have declined to adopt it since doing so was unnecessary to resolve the case.  See, e.g., Peabody, 636 F.3d at 374-75 (7th Cir. 2011); Brown v. Medtronic, Inc., 628 F.3d 451, 460 (8th Cir. 2010).  The Eleventh Circuit has not addressed the Moench presumption.

Based upon the weight of the authority, the Court concludes that  despite the language of § 1104(a)(2), an ESOP fiduciary may be liable for failing to diversify the investments of the Plan if his or her conduct violates the residual obligations applicable to all ERISA fiduciaries to act with the required level of care, skill, prudence and diligence under the circumstances.  Therefore, the Court rejects defendants' bright-line position that as a matter of law there can never be a claim upon which relief may be granted for failure of an ESOP fiduciary to diversify the investments of a plan.  This does not, however, require the Court to adopt the procedural device of a rebuttable presumption, such as in Moench. The issue simply is whether the Amended Complaint sets forth a plausible claim of breach of fiduciary duty based upon a failure to diversify under the circumstances alleged.

**(d) Application of ESOP Exemption in This Case:**

Saying that a cause of action is possible is not the same as saying that one has been set forth.  The Complaint must allege facts sufficient to state a plausible claim, which is no easy task even in those circuits which recognize the Moench presumption.  See, e.g., Edgar v. Avaya, Inc., 503 F.3d 340, 348-49 (3rd Cir. 2007).

In Quan, the Court stated the issue as "How bad do things have to be before no reasonable fiduciary in similar circumstances would have continued investing in company stock?"  Quan, 623 F.3d at 882.  In the context of a motion to dismiss, the more specific issue is whether the complaint plausibly alleges that things were bad enough so that no reasonable fiduciary in similar circumstances would have continued investing in Company Stock.  In this case, that standard is not satisfied in the Amended Complaint.

**(i) Allegations of Amended Complaint:**

The Amended Complaint seeks recovery of damages incurred between January 1, 2006 and November 13, 2009, and sets forth the following relevant factual allegations:

Orion Bank became a state-chartered member bank in 2002, and grew to become the largest privately held community bank in Southwest Florida.  (Doc. #34, ¶35.)  Orion Bank was the principal source of cash flow for Orion.  (Id.)  Orion Bank became one of the most profitable banks in Florida, and became a major player in the

Florida banking industry through a complete emphasis on an aggressive lending philosophy focused on providing high-risk commercial real estate loans, particularly loans for acquisition, development and construction. (<u>Id.</u> at ¶36.) From 2004 through 2006, Orion Bank followed a business strategy which focused on aggressive expansion of its commercial real estate and acquisition, development and construction loan portfolios in the South Florida market. (<u>Id.</u> at ¶52.) Orion Bank's growth was driven particularly by acquisition, development and construction loans tied to the residential real estate market, which led to high concentrations of these loans, well above the peer group industry standard. (<u>Id.</u> at ¶53.)

The Florida real estate market declined between 2005 and 2007, which lead to a deterioration of Orion's asset quality and to significant losses, particularly in the acquisition, development and construction loan portfolio. (<u>Id.</u> at ¶54.) The Office of the Inspector General would *later* report that Orion's Board of Directors and management failed to recognize the extent of the local real estate market downturn, were slow to identify problem loans, did not strengthen credit underwriting practices to account for market downturn, and renewed or extended loans using original terms despite clear declines in the value of the underlying projects and the deteriorating market conditions. (<u>Id.</u> at ¶54.) The actions of executive management resulted in mounting loan

losses, and when combined with the real estate downturn, eliminated Orion's earnings and depleted capital.  (Id. at ¶55.)

Under the heading of "Defendants' Wrongful Course of Conduct," the Amended Complaint sets forth the following:

A 2007 Call Report showed the influence of the declining loan market on Orion Bank by showing that Orion posted a loss of approximately $6 million, charge offs of approximately $3.4 million, and a loan loss provision of approximately $60.6 million. (Id. at ¶59.)   Nonetheless, Orion Bank paid $28 million in dividends, including $7.5 million to shareholders, a substantial portion of which went to Williams as the largest shareholder.  (Id. at ¶59.)   Plaintiffs assert that Orion Stock had been valued at $48.00 as of September 30, 2007 (id. at ¶12), but do not say who or what was doing the valuation.

The Amended Complaint then cites "[o]ther indications that something was awry at the Company...."  (Id. at ¶60.)   These included restrictions on the "put" option[8] (id. at ¶¶60-61), a reported 4.267% increase of non-current loans in December, 2007

---

        [8]"A put option is an option contract that gives the holder of the option the right to sell a certain quantity of an underlying security to the writer of the option, at a specified price up to a specified date. The value of a put increases as the price of the stock decreases."  S.E.C. v. Yun, 327 F.3d 1263, 1268 n.6 (11th Cir. 2003); see also Thompson v. RelationServe Media, Inc., 610 F.3d 628, 680 (11th Cir. 2010).

(id. at ¶62), and an April 7, 2008, media article reporting that Orion failed to take protective measures in response to the increase in non-current loan accounts.  (Id. at ¶63.)

In June, 2008, Williams sold 18,182 shares of his personal Orion Stock to the Plan for $55 per share, for a total of just over $1 million.  (Id. at ¶64.)  Because the Plan had no money to buy the shares, Williams caused the Plan to go into debt by borrowing the money.  (Id.)  At the same time, an unidentified director also caused the Plan to buy back 2,000 of the director's personal shares for approximately $110,000 (at $55 per share), which the Plan was also forced to borrow.  (Id.)

In a June 17, 2008 letter to shareholders, Williams took the "opportunity to tell you about the success Orion Bancorp, Inc. has achieved in the past few months while navigating through these challenging times."  (Id. at ¶65.)  Williams stated that "[w]e have been aggressive in dealing with any problem loans . . ." and that the Board of Directors had temporarily suspended cash dividends. (Id.)  Plaintiffs assert that this letter failed to disclose the extent to which the loan loss reserves were underfunded and the dire situation which resulted for Orion Bank.  (Id. at ¶66.)  In an August 13, 2008 letter to shareholders, Williams stated that despite a difficult operating environment, "Orion Bank continues to have strong core earnings and our risk based capital ratio is in the highest regulatory category, classified as 'well capitalized.'

-21-

Furthermore, we have built our loan loss reserve to over 3% of total loans – again, one of the strongest in the country." (Id. at ¶67.)

On August 25, 2008, the Federal Reserve issued an Order requiring, *inter alia*, that Orion Bank stop issuing dividends without Federal Reserve pre-approval. (Id. at ¶¶68, 70.) This Order instituted Federal Reserve supervision over multiple aspects of Orion Bank's business, including allowance for loan losses (id. at ¶69) and the bank's reserve calculation methodology. (Id. at ¶¶71, 73.) There is no allegation that Orion was precluded from investing in its own stock or offering it to the Plan for investment. The Order was publicized locally on at least September 11, 2008. (Id. at ¶74.)

On November 5, 2008, an investment bank reported that Orion Bank's stock was valued at $32.00 per share as of September 30, 2008 (id. at ¶75), although plaintiffs imply a lesser value was more appropriate. (Id. at ¶¶76, 77.) The Amended Complaint alleges that despite the "bleak" financial condition, Williams continued to falsely assure investors that everything was running smoothly. (Id. at ¶78.) Williams sent Plan participants a letter dated November 28, 2008, stating that the bank's earnings exceeded the prevailing levels for Florida banks, it continued to remain well capitalized, its trustees were working hard to keep the Plan running smoothly and treat participants fairly, and the trustees

-22-

had obtained a current appraisal value from an independent appraiser. (Id.) Plaintiffs allege that Orion Stock was valued at $55.00 per share as of December 31, 2008 (id. at ¶12), but fail to state the source for this valuation.

On April 30, 2009, the FDIC published the December 31, 2008 Call Report showing the bank suffered overall losses of approximately $20.4 million and charge offs of approximately $68.2 million, and had a loan loss provision of approximately $54.6 million and a balance of approximately $54.3 million. (Id. at ¶79.) A media report from November 19, 2009, stated that Orion Bank's condition by the summer of 2009 was significantly worse than the same time in 2008, surmising that "it's safe to say that the real estate downturn was the main cause of Orion's collapse." (Id. at ¶80.)

As directed by defendant Williams and with the approval and backing of all defendants (id. at ¶¶57-58), in the summer of 2009 Orion Bank issued approximately $60 million of illegal loans to "straw borrowers" without adequate underwriting standards. (Id. at ¶56.) These loans were used by the recipients to purchase Orion Bank's non-performing assets in order to remove such assets from Orion Bank's books. (Id.) Williams lied to regulators concerning whether he knew that an additional $15 million in loans were used to buy Orion Bank stock. (Id.)

A September 9, 2009, Call Report showed Orion Bank losses of approximately $83.9 million, charge offs of approximately $85.1 million, loan loss provisions of approximately $123.2 million, and a balance of approximately $92.6 million.  (Id. at ¶82.)  On September 18, 2009, the Federal Reserve and the Florida banking regulators issued a Cease and Desist Order, the harshest form of enforcement.  (Id. at ¶¶82, 83.)  On November 9, 2009, the Federal Reserve issued a Prompt Corrective Action Directive, directing Orion to terminate Jerry Williams from all his positions, take steps to become adequately capitalized, and be put into receivership.  (Id. at ¶¶84, 85.)  The Florida Office of Financial Regulation closed Orion Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver on November 13, 2009.  (Id. at ¶¶55, 86.)   In a December 21, 2009 letter, Plan Participants were informed that the value of all bank holding company stock was "zero."  (Id. at ¶86.)

### (ii) Bad Enough to Require Diversification?

The essence of most of Count I is that the Trustee Defendants knew that Orion was on the brink of collapse, yet continued to have the Plan invest in Orion Stock.  The Plan established that the investment policy was to be determined by the Employer (Orion), which was required to communicate the policy to the Trustees, who in turn were required to implement their management of Plan assets pursuant to the Employer's instructions.  The Amended Complaint

alleges that Orion utilized aggressive loan policies directed at real estate development, which were initially successful in making Orion a banking-industry star. As the real estate market began to sour, these once-successful aggressive loan policies lost their luster.

As of September 30, 2007, the Orion Stock value was placed at $48 a share by an unstated source; it was valued at $32 a share on September 30, 2008, by an independent investment bank; and on December 31, 2008, it was valued at $55 a share by an unstated source. This is not the "precipitous decline" in company stock seen in other cases. Compare, Moench, 62 F.3d at 557 (finding investment committee may have breached fiduciary duty where it continued to invest in company stock despite decline from $18.25 to less than $.025 per share), with Kuper, 66 F.3d at 1459-60 (concluding that company's acknowledged failure to even consider diversifying ESOP during an 18-month period where company's stock declined from more than $50 per share to approximately $10 per share did not constitute a breach of fiduciary duty), and Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004)("Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the Moench presumption.").

The allegations in the Amended Complaint regarding loan losses can be summarized as:

| Call Report Year | Loss Amount | Charge Offs | Reserve | Balance |
|---|---|---|---|---|
| 2007 | $6 million | $3.4 million | $60.6 million | Not Stated |
| 2008 | $40 million | $68.2 million | $54.4 million | $54.3 million |
| 2009 | $83.9 million | $85.1 million | $123.2 million | $92.6 million |

The Amended Complaint clearly fails to allege sufficient facts to support an obligation to diversify beginning January 1, 2006. Essentially all that is alleged for that time period is that the real estate market experienced a downturn beginning in 2005 and that this downturn affected the value of Orion's stock. The numbers for 2007 are also insufficient to establish a duty to diversify. There is no information alleged as to share value, and the losses, charge offs, and reserve numbers were relatively reasonable. The numbers for 2008 showed a dramatic increase in losses and charge-offs, but still reflected a balance of over $54 million. The 2009 numbers also showed significantly increased loss amounts and charge offs, but also a dramatically increased reserve amount and an increase in balance to over $92 million.[9]

---

[9]At oral argument, counsel for defendant Williams stated without contradiction that the Trustee Defendants stopped investing in Orion Stock in January, 2009, and kept the Participants' money as a cash asset of the Plan.

These facts, taken as true, do not suggest the dire situation contemplated by <u>Moench</u> which would require the Trustee Defendants to stop offering Orion Stock as an investment option or divest the Plan of Orion Stock, contrary to the very purpose of the Plan.  <u>See</u> <u>Moench</u>, 62 F.3d at 571-72 ("[C]ourts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.").  Stock fluctuations do not establish that Orion was on "the brink of collapse" and that no reasonable fiduciary would continue investing in Orion Stock.  <u>See, e.g.,</u> <u>Avaya</u>, 503 F.3d at 348 (dismissing a complaint which merely alleged that certain corporate developments had a negative effect on stock price, which fluctuated during the class period); <u>Kirschbaum</u>, 526 F.3d at 256 ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions.").  Finally, unlike the situation in <u>Moench</u>, where insiders plainly acknowledged the company's precarious condition and questioned the wisdom of continuing to invest in company stock, 62 F.3d at 558-59, here, plaintiffs have alleged no facts which show that the Trustee Defendants actually believed or knew Orion would collapse.  The totality of the circumstances alleged in the

Amended Complaint fail to establish a duty to diversity by the Trustee Defendants.

It is also noteworthy that plaintiffs were given an opportunity to diversify their personal contribuions to the Plan. (Doc. #43-2, p.66, ¶4.13(a).)   Participants who made individual contributions to the plan —- by rolling over a balance from another 401K or through salary deductions – were given the option of directing those contributions to investments other than Orion Stock. Id.  Therefore, unlike Moench which involved a "pure" ESOP (where one-hundred percent of the employees' investment was in employer stock), here the Plan allowed for a choice-of-investment option.   Such an option makes the case for compelled diversification by the Trustee Defendants not nearly as persuasive as in Moench.

Based on the foregoing, the Court finds that plaintiffs have failed to allege sufficient facts, assumed at this stage of the proceedings to be true, which would plausibly establish that the Trustee Defendants had a duty to diversify the Plan.  This portion of Count I will be dismissed.

**(2) Conflict of Interest:**

The second component of Count I alleges that the Trustee Defendants breached their duty to avoid conflicts of interest and

to promptly resolve conflicts.[10]   Defendants argue that the allegations of conflict of interest are insufficiently pled because they fail to identify specific conduct, fail to identify the conflict or how it was wrong, and fail to show how the conduct harmed the Plan.  Defendants also argue that there was no conflict of interest because there was no breach of a fiduciary duty by offering Orion Stock and no obligation to obtain an independent fiduciary to judge investments.  Defendants further argue that Orion Stock was prudent as a matter of law and was a suitable investment, therefore no notification of any agency was required. Additionally, defendants argue that they did not have a legal duty as fiduciaries to notify agencies, and that dual roles as a fiduciary and company employee were proper.

First, the Court notes that dual roles as fiduciary and company officer are proper.  29 U.S.C, § 1108(c)(3)("Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from serving as a fiduciary in addition to being an officer, employee agent, or other representative of a party in interest."); Evans v. Bexley, 750 F.2d 1498, 1499 (11th Cir. 1985). Second, because the Court has found that plaintiffs have failed to satisfactorily allege a breach of fiduciary duty with respect to the Plan's continued investment in Orion Stock, plaintiffs cannot

---

[10]"The diversification exemption stated in § 1104(a)(2) does not exempt EIAP fiduciaries from liability for 'other forms of imprudence.'"  Kirschbaum, 526 F.3d at 249 (citation omitted).

show that the Trustee Defendants had a duty to employ an independent fiduciary to judge investments or a duty to inform federal agencies of the facts and transactions which made Orion Stock an unsuitable investment for the Plan.  Plaintiffs have not sufficiently identified any other steps the Trustee Defendants were obligated to take to ensure that Participants' interests were loyally and prudently served.

This brings us to the final allegation in Count I, that the Trustee Defendants failed to place the Participants' interests above the Company's or their own interests.  While the Trustee Defendants were not generally required to place the Plan's interests above that of Orion, they had such an obligation when acting in their capacities as Plan fiduciaries.  Pegram, 530 U.S. at 225 ("ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.")  No facts are alleged in the Amended Complaint which would support such a breach by defendant Pollard. The Amended Complaint does, however, allege self-dealing by defendant Williams in connection with the Plan's buy-back of 18,182 of his shares of Orion Stock.  (Doc. #34, ¶64.)  While the Plan was authorized to borrow money for any lawful purpose (doc. #43-2, p.72, §5.4), causing the Plan to go into more than $1 million of debt may well have been contrary to the interests of the

Participants.[11]   Based  upon  the  facts  alleged  in  the  Amended

Complaint,  the  Court  finds  that  plaintiffs  have  plausibly  stated

such  a  claim  against  defendant  Williams  as  to  this  transaction.

Accordingly,  to  the  extent  Count  I  alleges  a  breach  of

fiduciary  duty  based  upon  the  Trustee  Defendants'  failure  to

diversify,  that  aspect  of  Count  I  will  be  dismissed  without

prejudice.   To  the  extent  Count  I  alleges  a  breach  of  fiduciary

duty  based  upon  a  conflict  of  interest,  that  aspect  of  Count  I  will

be  dismissed,  in  its  entirety,  without  prejudice,  as  to  defendant

Pollard  and  will  be  dismissed  without  prejudice  as  to  defendant

Williams  as  to  all  claims  except  the  June,  2008  sale  of  his  shares

of  Orion  Stock  to  the  Plan.

**B.   Count II:**

Count  II  is  stated  against  the  two  Trustee  Defendants,  and  is

captioned  "Breach  of  Duties  of  Loyalty  and  Prudence  by  Causing  Plan

to  Invest  in  Orion  Stock"  in  violation  of  29  U.S.C.  § 1104.   (Doc.

#34,  p. 36.)   Count  II  alleges  that  the  Trustee  Defendants  acted  as

ERISA  fiduciaries  by  exercising  authority  and  control  with  respect

to  the  management  of  the  Plan  and  its  assets.    (Id.  at  ¶126.)

Count  II  then  rather  summarily  alleges  that  the  Trustee  Defendants

breached  their  duties  of  loyalty  and  prudence  by  authorizing  or

causing  the  Plan  to  invest  in  Orion  Stock,  in  violation  of  29

---

[11]When  a  fiduciary  is  wearing  his  fiduciary  hat,  he  must  act
"solely  in  the  interest  of  the  participants  and  beneficiaries."   29
U.S.C.  § 1104(a)(1);  see also  Pegram,  530 U.S at  223-24.

U.S.C. § 1104.  (<u>Id.</u> at ¶127.)  Plaintiffs alleged the Plan therefore lost millions of dollars, and seek to have the Trustee Defendants restore the losses to the Plan.  (<u>Id.</u> at ¶128.)

Count II alleges a breach of the duty of loyalty and prudence premised solely on the failure to diversify Plan investments.  For the reasons set forth above, the Amended Complaint fails to state a claim upon which relief may be granted as to the failure to diversify.  Accordingly, Count II is dismissed without prejudice.

## C. Count III:

Count III alleges that the Trustee Defendants breached their fiduciary duties by failing to provide complete and accurate information to Plan participants and beneficiaries, in violation of 29 U.S.C. § 1104.  (Doc. #34, pp. 37-38.)  Specifically, Count III alleges that the Trustee Defendants failed "to provide complete and accurate information regarding Orion stock, and the soundness of Orion stock and the Plan as a retirement investment."  (<u>Id.</u> at ¶132.)  These actions and failures, it is alleged, caused Plan participants to make and maintain substantial investments in Orion Stock in the Plan at a time when the Trustee Defendants knew or should have known such was not a prudent investment option for the Plan or its participants because of Orion's impending collapse. (<u>Id.</u> at ¶133.)  Plaintiffs allege that the Plan therefore lost millions of dollars (<u>id.</u> at ¶134), and seek to have the Trustee Defendants restore the losses to the Plan.  (<u>Id.</u> at ¶135.)

The only allegations of a failure to provide complete and accurate information relate to defendant Williams.  Plaintiffs allege that in June 2008, Williams stated that "[w]e have been aggressive in dealing with any problem loans . . .." (Doc. #34, ¶ 65.)  In an August 2008 letter, Williams stated that despite a difficult operating environment, "Orion Bank continues to have strong core earnings and our risk based capital ratio is in the highest regulatory category, classified as 'well capitalized.'  Furthermore, we have built our loan loss reserve to over 3% of total loans - again, one of the strongest in the country." (Id. at ¶67.)  In a November 2008 letter, Williams sent a letter to Plan Participants stating that Orion's earnings exceed the prevailing levels of Florida banks and that Orion continued to remain well-capitalized.  (Id. at ¶ 78.)  The letter went on to state that Orion stock's "ten year cumulative rate of return is over 325% and our five year rate of return is over 114%...." (Id.)  Plaintiffs assert that these are either false statements or, at the least, literally true but misleading.  No specific allegations are made against Pollard, the other Trustee Defendant.

It is well-established that an ERISA fiduciary "may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed." In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996).  Indeed, the "'duty to inform is a constant thread in the relationship between beneficiary and

trustee; it is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" Id. at 441 (quoting Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1994)). In Unisys, the Third Circuit held that the same duty applies to "alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment." Id. at 442. In the investment context, "a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies" in a particular fund. Id.

The Court finds that the statements alleged by Williams in the Amended Complaint would be "material," and that there are sufficient allegations that the statements are at least misleading to a reasonable participant. Accordingly, the motion to dismiss Count III will be denied as to Williams. The Court finds that no factual allegations are made as to defendant Pollard, and therefore the motion to dismiss Count III is granted as to defendant Pollard.

**D.  Count IV:**

Count IV alleges that the Director Defendants breached their fiduciary duties by failing to adequately monitor the Plan's fiduciaries, in violation of 29 U.S.C. § 1104(a)(1). Specifically, Count IV alleges that the Director Defendants "acted as

'fiduciaries' because they were charged with, responsible for, and otherwise assumed the duty of, appointing, monitoring, and, when necessary, removing Plan fiduciaries, including the Trustee defendants."   (Doc. #34, ¶137.)   Plaintiffs allege that the Director Defendants knew or should have known that the Trustee Defendants were imprudently allowing the Plan to offer Orion Stock and investing plan assets in Orion Stock when it was not prudent to do so because of the Company's impending collapse.  (Id. at ¶138.) Plaintiffs further allege that in discharging their monitoring and oversight duties, the Director Defendants were required to disclose accurate information about the financial condition and practices of Orion, but remained silent and failed to provide such information to other fiduciaries.  (Id. at ¶139.)   Additionally, plaintiffs allege that the Director Defendants breached their monitoring duties by failing to remove fiduciaries who they knew or should have known were not qualified to loyally and prudently manage the Plan's assets.  (Id. at ¶140.)  As a result, the Plan lost millions of dollars (id. at ¶141), and plaintiffs seek to have the Director Defendants restore the losses to the Plan.  (Id. at ¶142.)

The first step, as always, is to determine whether the plaintiffs have adequately alleged that the Director Defendants were fiduciaries, Pegram, 530 U.S. at 226, and thereby had a duty to monitor the Trustee Defendants.  Here, the appointing fiduciary under the Plan is Orion, the entity.  (Doc. #43-2, §§1.21, 2.1(a).)

The plaintiffs have alleged no facts to support which Director Defendants, if any, were responsible for appointing or removing the Trustee Defendants.[12]  See Confer v. Custom Eng'g Co., 952 F.2d 34, 37 (3d Cir. 1991)("officers of a corporation that sponsors an employee benefit plan are not fiduciaries solely by reason of holding office"); see also Dupree v. The Prudential Ins. Co. of Am., No. 99-cv-8337,2007 WL 2263892 at *36 (S.D. Fla. 2007)(citing 29 C.F.R, §2509.75-8 and explaining that a company's board of directors is not a fiduciary simply because the plan document names the company as a plan fiduciary).  Plaintiffs have also alleged no facts to support that each individually named director exercised authority or control with respect to the management or disposition of the Plan's assets.[13]  See Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1459-61 (9th Cir. 1995)(citing § 1002(21) and finding that corporate officers can be individually liable when they exercise authority or control respecting management or disposition of the

---

[12]Indeed, plaintiffs do not allege that the individual directors appointed Williams and Pollard.  A conclusory statement that the Director Defendants were "charged with, responsible for, and otherwise assumed the duty of, appointing, monitoring, and, when necessary, removing Plan fiduciaries" is insufficient.  See Iqbal, 129 S. Ct. at 1949.

[13]While plaintiffs do allege that "a" director sold his shares back to the Plan, they do not identify which of the Director Defendants did so.  Instead, plaintiffs ask the Court to lump all of the Director Defendants together and to assume that all of them exercised authority or control over the disposition of the Plan's assets.

plan's assets).  Absent such allegations, plaintiffs' duty to monitor claim fails.

Even if the Court were to ignore this deficiency, plaintiffs have failed to adequately allege breach of the duty to monitor. ERISA does not itself mention an appointing official's duty to monitor fiduciary appointees.  Rather, a number of cases have held that the duty to monitor under ERISA arises from the following regulation:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to insure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 at FR-17; <u>see also</u>, <u>Coyne & Delany Co. v. Selman</u>, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996); <u>Leigh v. Engle</u>, 727 F.2d 113, 135 (7th Cir. 1984).  To show breach, plaintiffs must allege the Director Defendants had "notice of possible misadventure" by the Trustee Defendants or knowledge of conduct that would warrant removal. <u>Pedraza v. Coca-Cola Co.</u>, 456 F. Supp. 2d 1262, 1278 (N.D. Ga. 2006).

Count IV alleges that the Director Defendants failed in their obligation to monitor by (1) failing to disclose accurate information about the financial condition and practices of Orion, (2) failing to prevent the Trustee Defendants from continuing to invest in Company Stock, and (3) failing to remove the Trustee

Defendants whom they knew or should have known were not qualified to loyally and prudently manage the Plan's assets.

First, plaintiffs' conclusory allegation that the Director Defendants were required to disclose accurate information about the financial condition and practices of Orion, but remained silent and failed to provide such information to other fiduciaries (doc. #34, ¶139), is insufficient.  Plaintiffs plead no facts to demonstrate that the Director Defendants were in possession of information regarding the bank's financial condition that was not also known to Williams and Pollard.  Indeed, at the oral argument plaintiffs' counsel represented that Williams "ran the show" and dominated all aspects of the bank's operations.

Second, the Court has already found that the Amended Complaint does not sufficiently allege that the Trustee Defendants acted imprudently by failing to diversify the Plan.  To the extent Count IV relies on the premise of imprudent failure to diversify, it fails.  Plaintiffs cannot state a claim for breach of the duty to monitor without adequate allegations that the party being monitored acted inappropriately.

Accordingly, Count IV will be dismissed without prejudice.

**E.   Count V:**

Count V alleges that all defendants are liable for the breach of fiduciary duties by their co-fiduciaries, in violation of 29 U.S.C. § 1105.  Count V alleges that all defendants, by failing to

comply with their fiduciary responsibilities under § 1104(a), enabled their co-fiduciaries to violate ERISA and failed to make reasonable efforts to remedy the violations.

As discussed above, Count V fails to the extent it alleges that the Director Defendants are liable for permitting the Trustee Defendants to continue investing in Company Stock.  Plaintiffs must first state a claim for imprudence by one fiduciary before stating a claim for co-fiduciary liability.   To the extent this count relies on other breaches of fiduciary duty committed by Williams, plaintiffs have failed to specifically identify the conduct and how the Director Defendants' actions "enabled" the breach.[14]   See 29 U.S.C. §1105(a); Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983)("Under this rule, the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know

---

[14]While it is possible that Williams' forced buy-back of his personal shares and misrepresentations/omissions to Plan Participants could form the basis of this claim, plaintiffs have not identified it as such. Instead, plaintiffs allege that "among other things" the directors allowed the trustees to continually select Orion stock as an investment option. (Doc. #34, ¶146.) As a result, the Court cannot decipher which fiduciary breaches in addition to the failure to diversify relate to this count. The Court also cannot differentiate such breaches from plaintiffs' allegations of corporate mismanagement, which are not actionable under ERISA. See Husvar v. Rapport, 430 F.3d 777, 782 (6th Cir. 2005)("A claim that company directors did not operate the business itself in conformity with sound business practices does not, however, implicate the protections afforded by ERISA."); see also United Mine Workers of Am. v. Powhatan Fuel, 828 F.2d 710, 713-14 (11th Cir. 1987); Hickman v. Tosco Corp., 840 F.2d 564, 566-67 (8th Cir. 1988).

that it was a breach.")(citation omitted); <u>Stein v. Smith</u>, 270 F. Supp. 2d 157, 175 (D. Mass. 2003)(finding allegation that co-fiduciaries "knew or should have known" of alleged breaches insufficient when language of §1105(a) requires "knowing participation in" or facilitation of breach).  Therefore, Count V will be dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

Defendants' Dispositive Motion to Dismiss Amended Complaint (Doc. #43) and Dispositive Motion to Dismiss Amended Class Action Complaint (Doc. #46) are **GRANTED** in part and **DENIED** in part as follows:

1. To the extent Count I alleges a breach of fiduciary duty based upon the Trustee Defendants' failure to diversify, that aspect of Count I is dismissed without prejudice.  To the extent Count I alleges a breach of fiduciary duty based upon a conflict of interest, that aspect of Count I is dismissed, in its entirety, without prejudice, as to defendant Pollard and dismissed without prejudice as to defendant Williams as to all claims except the June, 2008 sale of his shares of Orion Stock to the Plan.

2. Count II is dismissed without prejudice.

3. Count III is dismissed without prejudice as to Defendant Pollard and the motion is denied as to defendant Williams.

4. Count IV is dismissed without prejudice.

5.   Count V is dismissed without prejudice.

6.   The Clerk shall withhold the entry of judgment but terminate from the docket defendants Alan Pratt, Earl P. Holland, James. W. Aultman, James J. Torok, Brian C. Schmitt, and Carla Pollard.

7.   Based upon these dismissals, the Court strikes the following paragraphs from the Amended Complaint: 8-12, 13(a)-(c), 22, 23, 27-33, 37, 56, 57, 104-117, 120, 121, 125-128, 136-149, 153(b),(c), (d), (f), (g).  Additionally, the Court strikes the following language:

    (A)   "Whereas shares of Orion Stock were valued during the Class Period as high as $48.00 per share on September 30, 2007, and $55 on December 31, 2008, in reality Orion Stock was utterly worthless as the Defendants caused the Company to adopt undisclosed business and lending practices that ultimately let to its downfall.  As a result of Defendants' course of conduct, Orion was taken over by the Federal Deposit Insurance Company ("FDIC") on November 13, 2009. Thus," is stricken from paragraph 12;

    (B)   "Byers and Pollard" is stricken from paragraph 24; and

    (C)   "failing to engage independent fiduciaries that could make independent judgments regarding the Plan's investments in Orion stock; failing to notify appropriate federal agencies, including the United States Department of Labor, of the facts and transactions which made Orion

stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; and in each of these failures by otherwise" is stricken from paragraph 122.

(D)  Additionally, to the extent the Amended Complaint refers to defendants "collectively" the allegations shall be construed as applying only to Williams.

**DONE AND ORDERED** at Fort Myers, Florida, this __26th__ day of September, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record